IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL HOSKINS,<br>    Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, d/b/a CITY OF ATLANTA FIRE AND RESCUE DEPARTMENT,<br>    Defendant. | CIVIL ACTION NO.: _____<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Michael Hoskins, by and through undersigned counsel, and hereby files this COMPLAINT against Defendant City of Atlanta Fire Rescue Department (hereinafter "City of Atlanta") and shows the Court as follows:

1. Mr. Hoskins brings this action pursuant to and under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, which incorporates by reference the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

1

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon the District Court "of all civil actions arising under the constitution, laws, or treaties of the United States."

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because Defendant, the City of Atlanta, is a municipality within the Northern District of Georgia and the acts, events and omissions which violated the ADA occurred in the Northern District of Georgia.

4. The City of Atlanta is subject to the jurisdiction of this court and may be served with the Complaint and Summons by delivering a copy of the same to the City of Atlanta, 55 Trinity Avenue, Atlanta Georgia 30303.

5. Defendant, City of Atlanta is an employer and municipality in the State of Georgia which is governed by the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

6.      The City of Atlanta is a body politic which is able to sue and be sued in its corporate name. *See City of Atlanta v. Brinderson Corp.*, 799 F.2d 1541, 1543 (11th Cir. 1986).

## FACTS THAT GIVE RISE TO THE DISABILITY DISCRIMINATION AND RETALIATION CLAIM

7.      Mr. Hoskins suffers from and has been diagnosed with a disability known as dyslexia.

8.      Dyslexia is a hidden disability; there are no external signs that would show Mr. Hoskins has dyslexia.  Dyslexia is a paradox—that is, in dyslexia a person can be very bright, possess a strong intellect and have outstanding reasoning and analytic abilities but yet read slowly or not at all and at times speak with mispronunciations and hesitations.

9.      In Mr. Hoskins case, dyslexia has substantially limited a major life activity because Mr. Hoskins can't read.

10.     On December 10, 1998 Mr. Hoskins was hired by the City of Atlanta.

11.     During the interview process Mr. Hoskins informed the recruiting officer for the City of Atlanta, Mr. Jimmy Hodges, that he suffered from dyslexia.

12. After Mr. Hoskins was hired and before he began his employment with the City of Atlanta, his disability was the subject of what the City of Atlanta terms the "muster". The muster is a meeting held among the fire department managers to discuss issues considered to be of importance to the managers. During the muster, Chief Barry Hobbs indicated that Mr. Hoskins had dyslexia and that he would be joining the department. Mr. Hobbs further stated that Mr. Hoskins had informed the City of Atlanta that he suffered from dyslexia. Further, during the discussion it was stated that Mr. Hoskins may require a longer period of time to get through the training but that the quality of his work was worth the delays. Lt. Jerome Robinson memorialized the "muster" in his August 5, 2006 memorandum.

13. Mr. Hoskins successfully completed the firefighter training and began work as a firefighter.

14. One of the ways Mr. Hoskins has attempted to deal with his dyslexia is by using a computer software program called the Kurzweil 3000 Firefly (hereafter "Firefly").

15. Firefly is an award-winning educational software program designed to provide literacy support for those who struggle with literacy in the classroom, at home, or in the workplace. Firefly has built-in features for reading, writing and study skills to help users become independent learners, and active participants in a classroom environment. Most importantly Firefly allows users to keep up with peers and achieve their full potential.

16. Firefly operates by simply converting electronic .pdf documents into audio format. Firefly then essentially reads to Mr. Hoskins the words contained on the .pdf document.

17. Firefly was created in 2011 or 2012.

18. With the rate technology has progressed in the past ten years, scanning a book into an electronic format has become easier than it once was. What once may have seemed like a burdensome request can now be done in a matter of minutes, with little burden to the City of Atlanta.

19. In order to maintain certifications as a paramedic, firefighter, and emergency management personnel, Mr. Hoskins must attend

continuing education classes. The classes are designed to educate firefighters and paramedics on how to be successful in their jobs. The continuing education classes are designed to ensure a minimum level of competency.

20. The Department of Health is authorized pursuant to O.C.G.A. §31-2A-6 to adopt and promulgate rules and regulations which effect the health of the people of this state.

21. One of the rules the Georgia Department of Public Health has issued concerns continuing education requirements for Emergency Medical Services Personnel. The Regulation for Licensure Renewal for Emergency Medical Services Personnel is contained at §511-9-2.13 of the Georgia Rules and Regulations.

22. The Georgia Department of Public Health requires a minimum of forty hours of continuing education over a 24 month period. During the continuing education training there are often handouts and materials that firefighters are expected to study and learn.

23. The Georgia Firefighters Standards and Training Council is another Agency authorized to make Rules and Regulations in the State of Georgia.

24. The purpose of the Georgia Firefighters Standards and Training Council is to establish uniform minimum standards for the employment and training of firefighters in Georgia. This includes the establishment of minimum curriculum requirements for courses, classes, or schools used in the training of firefighters in Georgia.

25. The regulations designed by the Georgia Firefighters Standards and Training Council are contained in §205 of the Georgia Rules and Regulations.

26. The Georgia Firefighters Standards Council requires 24 hours of continuing education that a firefighter must meet in order to maintain their certification. This requirement is contained in Georgia Regulation at §205-2-1-.04(4).

27. The Georgia Firefighters Standards Council also requires training materials, study manuals and other material published by the Georgia Fire Academy to be used in training.

28. The Federal Government also requires annual training for individuals like Mr. Hoskins, who work at the Atlanta Airport. These training exercises are mandatory and also have handouts and materials associated with them.

29. The continuing education requirements articulated by the Georgia Department of Health, the Georgia Firefighters Standards Council and the Federal Government all apply and regulate Mr. Hoskins ability to act as a firefighter and paramedic.

30. Additionally, the City of Atlanta has purchased books and training material that has been distributed to every fire station and combine to create a firehouse library. The library contains the following books and training materials that would aid Mr. Hoskins in training and possible promotions:

   a. Brannigan's Building Construction for the Fire Service, Fifth Edition; May 2014;

   b. Hazardous Materials Awareness and Operations, Second Edition, September 2014;

    c. Firefighting Strategies and Tactics, Third Edition, December 2013;

    d. Fire Investigator: Principles and Practice to NFPA 921 and NFPA 1033, December 2010;

    e. Fire Officer: Principles and Practice, Third Edition September 2014

    f. Live Fire Training: Principles and Practice: Revised First Edition, December 2014;

    g. Fire Inspector: Principles And Practice, August 2011;

    h. Fire Service Instructor: Principles and Practice, 2nd Edition, April 2013;

    i. Hazardous Materials: Managing The Incident, 4th Edition, November 2012;

    j. Vehicle Extrication Levels I & II: Principles And Practice, August 2011.

    k. Chief Officer: Principles and Practice, August 2011;

    l. Fundamentals Of Fire Fighter Skills, 3rd Edition, July 2013

31. The Atlanta Fire Training Center holds many classes each year and also teaches many of the continuing education courses that are required by the Department of Public Health and the Georgia Firefighters Standards and Training Council.

32. On June11, 2013, Mr. Hoskins asked for an accommodation for classes at the Atlanta Fire Training Center.  Specifically Mr. Hoskins asked that all instructional materials be provided in an electronic format prior to any future promotional testing.

33. On June 11, 2013, Chief Meadows responded that he was unfamiliar with a list of study material for promotional testing.  Chief Meadows' response specifically neglected to mention the continuing education training material used in classes at the Atlanta Fire Training Center or the books contained in the firehouse libraries that might aid Mr. Hoskins in obtaining promotions.

34. Chief Meadows and others in the Fire Department understand each firehouse has a library of documents and instructional materials designed to help a firefighter both do his job better and also qualify him for potential promotions.  Chief Meadows understands that training

materials are given in the form of handouts at many of the continuing education classes.

35. The City of Atlanta has made no effort to provide these books or continuing education training materials in a manner which Mr. Hoskins could access them.

36. The City of Atlanta has refused to acknowledge the books and continuing education materials are in fact training materials, even though they are kept at the firehouse for the purpose of training firefighters to do a better job.

37. The actions of the City of Atlanta amount to willful blindness, insofar as it refuses to acknowledge the books and continuing education materials contain valuable information that can help a firefighter do a better job and gain promotions.

38. By denying Mr. Hoskins the same set of educational and training materials Mr. Hoskins has not scored as high on tests and has not been promoted through the ranks as quick as he otherwise would have. The failure to accommodate Mr. Hoskins has significantly decreased his earnings potential.

39. Mr. Hoskins has also faced emotional trauma as a result of being cast aside by the City of Atlanta.

40. For example, in most of 2013 Mr. Hoskins was relieved of his duties and made to sit in an empty room for hours a day, instead of working in the field with his team.

41. In 2013 Mr. Hoskins was demoted because the City of Atlanta was tired of dealing with his disability.

42. By failing to accommodate Mr. Hoskins the City of Atlanta has not only denied Mr. Hoskins his rights under the ADA but also endangered the community by failing to provide necessary training materials to a firefighter.

43. On June 28, 2013, Mr. Hoskins filed an EEOC charge alleging disability discrimination for the failure to provide continuing education course information, resources, texts and exams in electronic format so that he could learn information and advance in the Fire Department. (Exhibit A).

44. The EEOC investigated and drafted Mr. Hoskins a "right to sue letter" on November 19, 2014.  The letter is postmarked November 21,

2014 and was received on November 22, 2014. This action is timely filed within 90 days of the receipt of the right to sue letter. (Attached as Exhibit B).

### COUNT-1 VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

45. Plaintiff adopts, realleges and reaffirms all allegations and averments contained in the above and foregoing paragraphs of this Complaint.

46. Mr. Hoskins is a qualified individual with a disability under the ADA.

47. The City of Atlanta violated Title I of the Americans with Disabilities Act by refusing to provide Mr. Hoskins with reasonable accommodations in the work place.

48. The discriminatory actions of the City of Atlanta caused Mr. Hoskins to fail to advance in his job and also it has denied him the training available to other individuals. Additionally, the discrimination harmed his compensation, advancement and other conditions of employment.

49. Mr. Hoskins was damaged by the failure to provide the training material in electronic format because he has not been able to access the same information and training as other firefighters, paramedics, and emergency service personnel.

50. The discriminatory actions of the City of Atlanta harmed Mr. Hoskins pecuniary interests because he did not have the opportunity to earn promotions he may have otherwise received.

51. The City of Atlanta's actions have caused and continue to cause Mr. Hoskins to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in an amount to be established at trial.

## PRAYER FOR RELIEF

Accordingly, Mr. Hoskins prays the City of Atlanta be cited to appear and answer in this action, and that upon the evidence, finding of the jury and applicable law, the court enter judgment:

    a. Declaring that the City of Atlanta discriminated against Mr. Hoskins in violations of the Americans with Disabilities Act;

  b. Ordering the City of Atlanta to make whole Mr. Hoskins by providing him with compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including back pay with prejudgment interest, forward pay, compensatory damages and punitive damages;

  c. Determining and awarding a reasonable attorney's fee and the costs and expenses of this action to Mr. Hoskins and his counsel against the City of Atlanta and providing for interim payment in the case of an appeal of the judgment;

  d. Ordering the City of Atlanta to pay non-pecuniary damages resulting from the unlawful employment practices that caused emotional pain, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  e. Including prejudgment and post-judgment interest as provided by law;

  f. All other relief to which Mr. Hoskins shows himself entitled at law or in equity.

# JURY TRIAL DEMAND

Mr. Hoskins requests a jury trial on all questions of fact raised by this complaint.

This 19th day of February, 2015.

           Respectfully Submitted,

           /s/*Thomas C. Wooldridge*
           Thomas C. Wooldridge
           Ga. Bar No. 384108
           Attorney For Mr. Michael Hoskins

Wooldridge & Jezek, LLP
1230 Peachtree Street NE
Suite 1900
Atlanta, Georgia 30309
Tel: 404.942.3300
Fax: 404.942.3301